UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| FIRST BANK,<br><br>Plaintiff,<br>v.<br><br>EXODUS et al,<br><br>Defendant. | CASE NO. 3:21-cv-05412-DGE<br><br>AMENDED<br>ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT |

This matter comes before the Court on Plaintiff First Bank's motion for summary judgment. (Dkt. No. 21.) Having considered Plaintiff's motion, Defendant's response, Plaintiff's reply, the exhibits and declarations attached thereto, and the remainder of the record, the Court GRANTS Plaintiff's motion for summary judgment.

### I. FACTUAL AND PROCEDURAL BACKGROUND

On June 1, 2021, Plaintiff filed a complaint in this court alleging that Defendants defaulted on a loan secured against Defendants' vessel, the *Exodus*, and their fishing rights.

AMENDED ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 1

(Dkt. No. 1.) The Court granted Plaintiff's motions to arrest the *Exodus*, appoint a substitute custodian, and move, board, and inspect the vessel. (Dkt. Nos. 2, 3, 7, and 8.)

On November 11, 2021, Plaintiff filed the instant motion for summary judgment, arguing that there is no factual dispute that Defendants' loan is in default or that an unpaid balance remains on the loan. (Dkt. No. 21.) Plaintiff asks the Court to enter judgment against Defendants and default judgment against any third parties who may have an interest in Defendants' assets. (*Id*.)

Defendant objects to Plaintiff's motion, arguing that: 1) Plaintiff has failed to establish that they are entitled to the late fees included in Defendants' unpaid balance, and Plaintiff has not explained how it calculated these fees; and 2) the fishing rights (referred to in the parties' briefs as the "Individual Fishing Quota") sought by Plaintiff are not "appurtenances" of a vessel that would attach to the vessel itself, and could be used by Defendant on vessels other than the *Exodus*; Defendants state that they have leased their fishing rights to be used by other vessels. (Dkt. No. 25.) Defendant requests additional time, pursuant to Fed. R. Civ. P. 56(f)[1], to ascertain how Plaintiff calculated the late fees included in the unpaid balance. (*Id*.)

## II.   STANDARD OF REVIEW

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247 (1986). Material facts are those which might affect the outcome of the suit under governing law. (*Id.* at 248.) In ruling on summary judgment, a court does not weigh evidence to determine the truth of the matter, but "only determine[s] whether there is a genuine issue for trial." *Crane v. Conoco, Inc*., 41 F.3d

---

[1] Defendants clearly seek relief pursuant to Rule 56(d), which was formerly Rule 56(f).

AMENDED ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 2

547, 549 9th Cir. 1994) (citing *Federal Deposit Ins. Corp. v. O'Melveny & Meyers,* 969 F.2d 744, 747 (9th Cir. 1992)).

On a motion for summary judgment, the court views the evidence and draws inferences in the light most favorable to the non-moving party. *Anderson,* 477 U.S. at 255; *Sullivan v. U.S. Dep't of the Navy,* 365 F.3d 827, 832 (9th Cir. 2004). The Court must draw all reasonable inferences in favor of the non-moving party. *See O'Melveny & Meyers,* 969 F.2d at 747, rev'd on other grounds, 512 U.S. 79 (1994). However, the nonmoving party must make a "sufficient showing on an essential element of her case with respect to which she has the burden of proof' to survive summary judgment. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986).

While it is sufficient for the Plaintiff to establish that there is a genuine dispute concerning a material fact, once the moving party has carried its burden under Federal Rule of Civil Procedure 56, the party opposing the motion "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio,* 475 U.S. 574, 586 (1986). The opposing party cannot rest solely on her pleadings but must produce significant, probative evidence in the form of affidavits, and/or admissible discovery material that would allow a reasonable jury to fmd in her favor. *Id.* at n.11; *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249-50 (1986).

The nonmoving party "must produce at least some 'significant probative evidence tending to support the complaint.' *(Id.); see also California Architectural Building Products, Inc. v. Franciscan Ceramics, Inc.,* 818 F.2d 1466, 1468 (9th Cir. 1987). ("No longer can it be argued that any disagreement about a material issue of fact precludes the use of summary judgment.").

"If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . grant summary judgment if the motion and supporting materials--including the facts considered undisputed-- show that the movant is entitled to it[.]" Fed R. Civ. P. 56(e)(3).

### III.   DISCUSSION

**A. Whether Defendants' Fishing Rights Qualify as "Appurtenances".**

Defendants argues that their fishing rights are not "appurtenances" of the *Exodus* and therefore should not be foreclosed upon along with the vessel. (Dkt. No. 25.)

A vessel is defined as the "hull and engines, tackle, apparel, and furniture of all kinds." *The Augusta*, 15 F.2d 727, 727 (E.D. La. 1920) (internal citation omitted). In addition to the vessel, maritime liens also attach to the ship's "usual equipment ... and appurtenances." *The Great Canton*, 1924 A.M.C. 1074, 1075 (S.D. N.Y. 1924).

Black's Law Dictionary defines the word "appurtenance" as "[s]omething that belongs or is attached to something else; esp[ecially], something that is part of something else that is more important." (11th ed. 2019). In the maritime context, the key inquiry into whether something is an appurtenance is whether the item is "essential to the ship's navigation, operation, or mission." *Gowen, Inc. v. F/V Quality One*, 244 F.3d 64, 67-68 (1st Cir. 2001) (citing *Gonzalez v. M/V Destiny Panama*, 102 F. Supp. 2d 1352, 1354 (S.D. Fla. 2000); *United States v. F/V Sylvester F. Whalen*, 217 F.Supp. 916, 917 (D. Me. 1963)).

Authority from the United States Supreme Court and other circuits suggests that intangible assets such as fishing rights can qualify as appurtenances in the maritime context. *United States v. Freights, Etc. of the Mount Shasta,* 274 U.S. 466, 470, 47 S.Ct. 666, 71 L.Ed. 1156 (1927) (intangibles may be subject to maritime liens against the vessel)*; Gowen*, 244 F.3d

at 67-68 (noting there is "no general objection to treating an intangible as an ppurtenance", and when considering whether a fishing permit qualified as an appurtenance, noting that it was "the rights themselves" rather than the physical permit itself that determined the market value and creditworthiness of the vessel, as much as its engine, physical dimensions, and navigation equipment.); *see also Fuller Marine Services, Inc*. v. F/V WESTWARD, No. 15-212, 2015 WL 5674828, at *2 (D. Me. Sept. 24, 2015) (citing the First Circuit's reasoning in *Gowen* and noting the "traditional rule" that maritime liens attach not only to the vessel but to any appurtenance "which is essential to the vessel's mission."); *Offenbacher v. Ahart*, No. 07-326, 2009 WL 523097, at *7 (D. Or. Feb. 25, 2009) (also adopting the *Gowen* court's reasoning.)

There is some question concerning whether the First Circuit was correct in *Gowen* when it found that fishing rights qualified as appurtenances. 1 Schoenbaum, Admiralty and Maritime Law § 9–1 n. 47 (6th ed. 2021) (characterizing the First Circuit's conclusion as "highly questionable"). There is also some authority suggesting that liens against intangible assets attached to one ship do not necessarily transfer to another. *PNC Bank Delaware v. F/V Miss Laura,* 381 F.3d 183, 187 (3d Cir. 2004) (holding that a lien held against a vessel's fishing permits and history ceased once the vessel sank and the fishing history was transferred to a replacement vessel.)

Even if Defendant's fishing rights were not appurtenant to the *Exodus*, this case presents somewhat different facts from those cited by the Court above. In *Gowen*, plaintiff sought to recover debts owed for wharfage and repair, and the vessel in question was arrested pursuant to a warrant commanding the seizure of "her equipment, engines, and appurtenances." 244 F.3d 64, 65 (1st Cir. 2001). In *PNC Bank Delaware*, plaintiff's provision of repair services entitled it,

AMENDED ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 5

under federal law, to a maritime lien "against the vessel and its appurtenances." 381 F.3d 183, 185 (3d Cir. 2004)

In those cases, the courts had to ascertain whether certain assets counted among the "appurtenances" that plaintiff was entitled to under maritime law. The present case presents no such ambiguity, as the security agreements between the parties explicitly list Defendants' fishing rights among the collateral used to secure the loan. (Dkt. Nos. 1-1; 1-5; 1-6.)

Accordingly, even if the fishing rights in question were not appurtenances to the *Exodus,* there is no genuine dispute of material fact that Defendants specifically included their fishing rights as collateral to secure the loans from First Bank. *Bank of the Pac. v. F/V ZOEA,* No. 3:15-CV-05758-RBL, 2017 WL 823298 at *2 (W.D. Wash. Mar. 2, 2017) (finding that ship mortgage lenders can have a security interest in Washington commercial fishing permits appurtenant to a mortgaged vessel.)

**B. Plaintiff's Calculation of Late Fees.**

Defendant contends that Plaintiff has failed to establish that it is entitled to the late fees included in Defendants' unpaid balance, and that Plaintiff has not explained how it calculated these fees. (Dkt. No. 25.) Defendant requests additional time, pursuant to Fed. R. Civ. P. 56(d), to ascertain how Plaintiff calculated the late fees included in the unpaid balance. *(Id.)*

Fed. R. Civ. P. 56(d) provides that if the nonmoving party subject to a motion for summary judgment shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:

(1) defer considering the motion or deny it;

(2) allow time to obtain affidavits or declarations or to take discovery; or

(3) issue any other appropriate order.

AMENDED ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 6

Here, Defendants Fred J. Hankins and Christina Hankins submitted declarations in response to Plaintiff's motion for summary judgment. (Dkt. Nos. 26 and 27.) The Hankins' declarations discuss their history in the fishing industry, their purchase of the *Exodus*, and the circumstances that left them unable to repay their bank loans. (*Id.*) Neither declaration contains information relevant to Defendants' contention concerning Plaintiff's calculation of, or entitlement to, late fees.

A party requesting a continuance pursuant to [Rule 56(d)] must identify by affidavit the specific facts that further discovery would reveal, and explain why those facts would preclude summary judgment. *Tatum v. City & County of S.F.*, 441 F.3d 1090, 1100 (9th Cir. 2006). Failure to comply with the requirements of Rule [56(d)] is a proper ground for denying discovery and proceeding to summary judgment. *Brae Transp., Inc. v. Coopers & Lybrand*, 790 F.2d 1439, 1443 (9th Cir.1986). A failure to provide an affidavit or declaration stating with particularity the information a nonmoving party seeks to obtain through discovery can be fatal to a request for a continuance filed pursuant to Rule 56(d). *In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 989 (9th Cir. 1999).

The declarations submitted by Defendants do not contain any specific information concerning late fees. Further, Defendants' request for a continuance so they can determine whether Plaintiff is entitled to late fees and how Plaintiff calculated these fees appears to be unnecessary since both Plaintiff's entitlement to these fees and the method for calculating them are spelled out in the promissory note Defendants signed in connection with their loan agreement. (Dkt. No. 1-3.) The Court also notes that in response to Defendants' contention regarding late fees, Plaintiff has submitted declarations from First Bank officers describing in detail the accrual of late fees since the loan initially went into default in 2013. (Dkt. Nos. 22, 29

and 30.) Accordingly, there remains no genuine issue of material fact concerning Plaintiff's entitlement to late fees or Defendants' fishing rights, and Plaintiff is entitled to summary judgment.

## IV.   ORDER

Having considered Plaintiff's motion, Defendants' Response, Plaintiff's Reply, the exhibits and declarations attached thereto, and the remainder of the record, the Court finds and ORDERS:

(1)   That Plaintiffs motion for summary judgment (Dkt. No. 21.) is GRANTED.

(2)   That First Bank shall have judgment *in rem* against Defendant EXODUS, Official No. 960616, its Engines, Machinery, Appurtenances, etc. including the Fishing Rights defined in the parties' security agreement as

> Sablefish Individual Fishing Quotas: 358,880 I.F.Q. Units designated as: S-WY-B-U- 1,364,783,385 through S-WY-B-U-1,365,142,264 and 148,864 I.F.Q. Units designated as S-CG-B-U-241,412,721 through S-CG-B-U-241,561,584, Halibut Individual Fishing Quotas: 122,118 I.F.Q. Units, designated as H-3B-B-U- 820,289,433 through H-3B-B-U-820,441,550, 69,492 I.F.Q. Units, designated as: H-3B-B-B-820,219,941 through H-3B-B-B-820,289,432 and 55,026 I.F.Q. Units, designated as H-3B-C-U-908,130,233 through H-3B-C-U-908,185,258.

(3)   That First Bank shall have judgment *in personam* against Defendants Fred J. Hankins and FJ Hankins Enterprises, Inc. for the principal amount of $810,635.10, along with late charges of $46,913.90, interest through November 8, 2021 of $93,528.60 interest until the date of judgment at a rate of $133.26 per day, as well as Plaintiffs reasonable attorneys' fees, arrests costs, and other expenses of collection.

(4)   That, due to the failure by any non-party to appear in this action or assert a claim against, or interest in, the vessel EXODUS, default and default judgment shall be entered against all third parties, and the vessel shall be sold free of any claims or liens.

(5) That the preferred ship mortgage in favor of the Plaintiff on the Vessel is foreclosed and that any and all persons claiming any interest in the Vessel are forever barred and foreclosed of and from all rights of equity or redemption or claim to the Vessel;

(6) That First Bank's security interest in the Fishing Rights as described above shall be foreclosed, permitting First Bank to possess, convey, and sell those Fishing Rights in accordance with applicable law;

(7) That the U.S. Marshal shall, pursuant to Supplemental Rule E(9) and LAR 150, cause the Vessel and the Fishing Rights to be sold in accordance with the law, either together or separately, at the election of Plaintiff;

(8) That the proceeds of the sale should be applied to pay

    a. The Marshal's costs of administration, and

    b. The *in rem* claims of the Plaintiff against the Vessel and Fishing Rights in the amount of $956,072.60, which includes principal and interest as calculated through November 8, 2021 and late fees, with interest accruing in the amount of $133.26 per day, and

    c. The *in personam* claims of the Plaintiff against Fred J. Hankins, in the amount of $956,072.60, which includes principal and interest as calculated through November 8, 2021 and late fees, with interest accruing in the amount of $133.26 per day, and

    d. The *in personam* claims of the Plaintiff against FJ Hankins Enterprises, Inc. in the amount of $956,072.60, which includes principal and interest as calculated through November 8, 2021 and late fees, with interest accruing in the amount of $133.26 per day, and

AMENDED ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 9

  e. First Bank's reasonable attorneys' fees and costs to be assessed by further order this Court and provided in paragraph (10) below, and

  f. Past and future substitute custodian fees, moorage, and related fees as documented with the U.S. Marshal and calculated to the date of the sale.

(9) That the Plaintiff shall be permitted to bid all or part of its judgment hereunder without cash deposit.

(10) That within 14 days of the date of this Order, Plaintiff shall submit a Bill of Fees and Costs, summarizing its attorneys' fees, costs, and other expenses in connection with this action. The Court shall thereafter, without further motion, assess reasonable fees and costs.

(11) That, after the Court's assessment of fees and costs, the Court shall issue judgment *in personam* against Defendants Fred J Hankins and FJ Hankins Enterprises in the amount of $956,072.60, with interest accruing in the amount of $133.26 per day from November 8, 2021 to the date of judgment, as well as all attorneys' fees, costs, and expenses as assessed by the Court.

(12) That, within 30 days after the Marshal's sale of the Vessel and Fishing Rights, Plaintiff shall report the results of the sale(s) to the Court and, if any portion of the judgment was used to credit bid, the *in personam* judgment authorized herein shall be partially satisfied to account for the bid amount.

AMENDED ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT **- 10**

Dated this 8th day of April, 2022.

                                                David G. Estudillo
                                                United States District Judge